UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BENJAMIN MEE,

       Plaintiff,               Case No. 2:19-cv-11714
                                 District Judge Linda V. Parker

v.                               Magistrate Judge Anthony P. Patti

RONALD WYSE,

       Defendant.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO
GRANT IN PART AND DENY IN PART DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT (ECF No. 17)**

**I.**    **RECOMMENDATION**:  The Court should **GRANT IN PART** and

**DENY IN PART** Defendant's motion for partial summary judgment.  (ECF No.

17.)

**II.**    **REPORT**

        **A.**    **Background**

               **1.**    **Factual Background**

Plaintiff Benjamin Mee, on parole at the present time[1] and proceeding *in pro

per*, filed the instant lawsuit under 42 U.S.C. § 1983 on June 7, 2019, while

_____

[1] *See* www.michigan.gov/corrections/, "Offender Search"

incarcerated at Parnall Correctional Facility (SMT).[2]  Plaintiff claims that

Defendant Ronald Wyse, a general office assistant at SMT, read and censored his

outgoing JPay correspondence which contained disparaging statements about

prison officials, conditions, and policies, and retaliated against him for such

comments by issuing insolence misconducts and notices of intent to conduct

administrative hearings (NOIs), in violation of his First and Fourteenth

Amendment rights.  (ECF No. 1, PageID.1-5, ¶¶ 1, 4-19.)  Specifically, he alleges

that Defendant censored his outgoing correspondence on November 16, 2018,

November 28, 2018, December 14, 2018, January 8, 2019, twice on January 18,

2019, March 5, 2019, March 18, 2019, and twice on March 22, 2019; issued Class

II misconduct reports on November 30, 2018, December 14, 2018, January 8,

2019, March 19, 2019, March 25, 2019, and March 27, 2019; and issued NOIs on

January 16, 2019, and March 7, 2019.  (ECF No. 1, PageID.2-3, ¶¶ 7(A-J), 8(A-F),

9.)[3]

---

[2] Plaintiff's complaint meets the requirements of an unsworn declaration because it states, "I, the undersigned declares under penalty of perjury the foregoing averments are true and correct and based upon my personal knowledge, and I am competent to testify."  (ECF No. 1, PageID.6.)  *See* 28 U.S.C. § 1746(2).

[3] Under the "Cause of Action" portion of Plaintiff's complaint, he states that as a result of Defendant's retaliatory actions, he received misconduct reports on December 14, 2019, and January 8, 2019, and NOIs on January 16, 2019, and March 7, 2019 (ECF No. 1, PageID.5, ¶ 19.)  Considering the dates of misconducts listed in Plaintiff's factual allegations, as well as the filing of his complaint on June

###### 2.    Instant Motion

On November 18, 2019, Defendant filed the instant motion for partial summary judgment pursuant to Fed. R. Civ. P. 56(a), asserting that Plaintiff only properly exhausted his claims of unconstitutional censorship on December 14, 2018, and March 18, 2019, and retaliation in the form of a NOI on January 16, 2019.  Accordingly, he asserts that all of Plaintiff's additional claims should be dismissed.  (ECF No. 17, PageID.66-72.)  Attached to Defendant's motion are two grievance reports containing a multitude of grievances filed by Plaintiff during his time at SMT, only some of which relate to his claims here.  (Exhibits C and D, ECF Nos. 17-4, 17-5.)

Plaintiff filed his response in opposition on December 6, 2019, accompanied by a declaration, asserting that: (1) Defendant failed to carry his burden of demonstrating that a reasonable jury would believe the relevant grievances had been properly rejected on procedural grounds; (2) many of the relevant grievances served to exhaust his claims because they were improperly rejected on procedural grounds; (3) Defendant failed to address in the motion a number of his claims which should, therefore, remain in the lawsuit; and (4) Michigan Department of Corrections (MDOC) employees, including grievance coordinator John Brawley,

_____

7, 2019, the Court should assume that Plaintiff meant to list December 14, *2018*, as the date of the misconduct report.

3

attempted to thwart exhaustion for Plaintiff and other inmates by improperly rejecting grievances, failing to provide receipts and forms in a timely manner, if at all, and misrepresenting the grievance policy.  (ECF No. 19, PageID.259-268.)

In Defendant's reply, filed December 19, 2019, he asserts that those relevant grievances rejected on procedural grounds were properly rejected (ECF No. 22, PageID.295-298), and states, "[C]ontrary to [Plaintiff's] assertions, he has not established that Parnall Grievance Coordinator John Brawley—or any other Grievance Coordinator for that matter—misrepresented policy and purposefully rejected [Plaintiff's] grievances in an effort to discourage or thwart him from exhausting his claims" (ECF No. 22, PageID.298).

### B.      Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf*. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The nonmoving party "must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must . . . do more than simply show that there is some metaphysical doubt as to the material facts[.] . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted). In other words, summary judgment is appropriate when the motion "is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case . . . ."

*Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not reduce his obligations under Rule 56.  Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law."  *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion."  *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

### C.    Discussion

#### 1.    Exhaustion under the PLRA

Under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e *et seq.*, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Congress enacted the provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007).  Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits[.]" *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211.  The prison's grievance process determines when a prisoner has properly exhausted his or her claim.  *Id*. at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of

proper exhaustion.").  Thus, the PLRA requires not only exhaustion, but *proper* exhaustion.  *See Woodford*, 548 U.S. at 92 (concluding that if a prisoner fails to file a procedurally proper grievance, he fails to satisfy the PLRA's exhaustion requirement).  "[P]roper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits.)"  *Id*. at 90 (quotation marks and citation omitted).  As long as the prison "clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust."  *Burnett v. Howard*, No. 2:09-CV-37, 2010 WL 1286256, at *1 (W.D. Mich. Mar. 30, 2010) (internal quotation marks and citation omitted).  That said, a court "is not required to blindly accept the state's application of the procedural rule."  *Reeves v. Salisbury*, No. 11-cv-11830, 2012 WL 3206399, at *5 (E.D. Mich. Jan. 30, 2012), report and recommendation adopted in part, rejected on other grounds, 2012 WL 3151594 (E.D. Mich. Aug. 2, 2012).

The prisoner "may not exhaust administrative remedies during the pendency of the federal suit."  *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (citations omitted); *see also Woodford*, 548 U.S. at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction

8

. . . .").  However, "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim."  *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017).

Finally, "inmates are not required to specially plead or demonstrate exhaustion in their complaints."  *Jones*, 549 U.S. at 216.  Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA.  *Id*. at 212-13. As such, defendants bear the burden of proof on exhaustion.  *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

## 2.  Grievance procedures at the MDOC

Pursuant to Policy Directive 03.02.130, dated July 9, 2007, the administrative remedies available at the MDOC are as follows.[4]  First, the inmate must attempt to resolve issues with the staff member involved within two business days of becoming aware of a grievable issue.  (ECF No. 17-3, PageID.82, ¶ P.) "Dates, times, places, and names of all those involved in the issue being grieved

---

[4] Defendant attached to the instant motion only the version of PD 03.02.130 effective in 2007 (ECF No. 17-3), which was superseded on March 18, 2019. Thus, any grievances filed by Plaintiff after that date are subject to revised PD 03.02.130.  I will cite to the revised version in the Discussion section, where applicable.  The citations above are to the 2007 version.

9

are to be included."  (ECF No. 17-3, PageID.83, ¶ R.)  The inmate should receive a response at Step I within fifteen business days after receipt of the grievance.  (ECF No. 17-3, PageID.83-84, ¶ X.)

If the inmate is dissatisfied with the Step I disposition or does not receive a response by ten business days after the due date, he or she may filed a Step II grievance using the appropriate form.  (ECF No. 17-3, PageID.84, ¶ BB.)  As with Step I, the inmate should receive the Step II response within 15 business days. (ECF No. 17-3, PageID.84, ¶ CC.)

Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response by ten business days after the due date, the inmate may file a Step III grievance.  (ECF No. 17-3, PageID.85, ¶ FF.)  "To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form (CSJ-247B), to the Grievance and Appeals Section within ten business days after the date the response was due, including only extensions."  (ECF No. 17-3, PageID.85, ¶ FF.)  The matter is fully exhausted after the disposition of the Step III grievance.  *Surles*, 678 F.3d at 455 ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

> **3.    The Court should deny summary judgment of Plaintiff's December 14, 2018 and March 18, 2019 censorship claims, and January 16, 2019 retaliation claim, as Defendant concedes proper exhaustion of these claims**

Defendant attached to the instant motion two Grievance Reports containing the sum of grievances filed by Plaintiff while at SMT at the time the motion was filed, ten of which he asserts relate to Plaintiff's claims in this lawsuit.  (*See* ECF Nos. 17-4 & 17-5; ECF No. 17, PageID.66, 70-71.)  On the basis of grievances SMT-18-12-1593-15Z, SMT-19-03-1451-28e, and SMT-19-02-0188-7A, Defendant concedes that Plaintiff exhausted the claims related to his December 14, 2018, and March 18, 2019 censorship allegations, and to his allegation of retaliation in the form of a NOI issued on January 16, 2019.  (ECF No. 17, PageID.67-71; ECF No. 22, PageID.296.)  Accordingly, the Court should consider these claims exhausted for purposes of summary judgment.

### 4.    Additional censorship claims

Defendant argues, however, that he is entitled to summary judgment of Plaintiff's additional claims of censorship on the basis that Plaintiff failed to exhaust these claims.  I will address them in turn.

### a.    November 16, 2018 and November 28, 2018

The Court should deny Defendant's motion for summary judgment with regard to Plaintiff's November 16, 2018, and November 28, 2018 allegations of unconstitutional censorship (ECF No. 1, PageID.2, ¶ 7(A-B)), because a question of fact exists as to whether Plaintiff properly exhausted these claims.  At Step I of SMT-18-12-1255-27A, with an incident date of November 25, 2018, Plaintiff

11

complained that Defendant issued two tickets for insolence misconduct on November 16, 2018, and November 30, 2018, in violation of his First Amendment rights.  (ECF No. 17-4, PageID.217.)  Following the rejection of the grievance on the basis that decisions made in hearings conducted by hearing officers are non-grievable (ECF No. 17-4, PageID.218), Plaintiff attempted to clarify in his Step II appeal that he intended to complain of email censorship (ECF No. 17-4, PageID.215), but the rejection was ultimately upheld at Steps II and III.

With no analysis as to the legitimacy of this rejection in his summary judgment motion, Defendant asserts that "improperly filed grievances cannot serve to exhaust a prisoner's claims so this grievance does not help [Plaintiff] for exhaustion purposes."  (ECF No. 17, PageID.67.)  However, a thorough reading of the grievance suggests otherwise.  It is not unreasonable, as Plaintiff asserts in his response to the instant motion, that SMT-18-12-1255-27A relates to his November 16, 2018, and November 28, 2018 censorship allegations, and was improperly rejected as a challenge to a hearing decision "because it complained, in an unartful way, of censorship and retaliation with no mention of decisions by the hearing officer for the referenced misconducts."  (ECF No. 19, PageID.261.)

Although PD 03.02.130 requires that a grievance list the dates, times, places, and names of those involved in the issue being grieved (ECF No. 17-3, PageID.83, ¶ R), and the grievance at issue refers specifically to retaliation in the form of

insolence misconducts on two dates, one of which is different than that listed

amongst Plaintiff's censorship allegations, Plaintiff also stated at Step I that the

two misconduct tickets violated his First Amendment rights because it is

unconstitutional to censor and discipline prisoners based on negative statements in

outgoing mail (ECF No. 17-4, PageID.217).  This, along with his clarification

regarding the nature of the complaint at Step II (ECF No. 17-4, PageID.215),[5]

creates a genuine issue of fact regarding the application of this grievance to his

November 16, 2018, and November 28, 2018 censorship allegations.

Moreover, neither claims of censorship, nor claims of retaliation for that

matter, are properly rejected on the procedural basis that decisions made in

hearings conducted by hearing officers are non-grievable.  For obvious reasons, an

individual's act of censorship is not a hearing decision, and a complaint in the form

of a retaliatory misconduct report is distinct from a grievance regarding the

outcome of a misconduct hearing itself, which is in fact prohibited under PD

03.02.130 (ECF No. 17-3, PageID.80-81, ¶ F).  *See Reynolds-Bey v. Harris*, 428 F.

App'x 493, 500-01 (6th Cir. 2011) ("As distinct from the outcomes of misconduct

---

[5] I acknowledge, however, that a "'[p]laintiff cannot raise a new issue in a grievance appeal and have it be deemed exhausted, unless the MDOC proceeded to address that new claim on the merits[,]'" *Dykes v. Fuller*, No. 18-11528, 2019 WL 6170868, at *3 (E.D. Mich. Aug. 7, 2019), report and recommendation adopted, No. 18-cv-11528, 2019 WL 4744433 (E.D. Mich. Sept. 30, 2019) (citation omitted).

*hearings*, the filing of retaliatory misconduct *reports* is grievable under MDOC Policy Directive 03.02.130.")  Accordingly, the Court should find genuine issues of material fact with regard to both the application of this grievance to the above censorship claims and to exhaustion, and deny summary judgment of these claims on that basis.

### b.    January 8, 2019 and January 18, 2019

The Court should also deny summary judgment of Plaintiff's claims that Defendant unconstitutionally censored his outgoing communications on January 8, 2019, and twice on January 18, 2019 (ECF No. 1, PageID.2, ¶ 7(D-F)), as a reasonable jury could find each fully exhausted because the associated grievances were improperly rejected on procedural grounds, and appealed through Step III.

At Step I of SMT-19-01-0050-27b, with an incident date of January 9, 2019, one day off from that listed in the complaint, Plaintiff complained that Defendant unconstitutionally censored his outgoing mail and that, although he did not believe PD 05.03.118-NNN applied, his emails did not violate that provision so as to warrant censorship.  (ECF No. 17-4, PageID.207.)  The grievance was rejected at Steps I, II, and III for improperly grieving the content of a policy or procedure. (ECF No. 17-4, PageID.204-206.)  However, the Court need not blindly accept procedural rejections, *Reeves*, 2012 WL 3206399, at *5, as Defendant suggests

(ECF No. 17, PageID.68; ECF No. 22, PageID.296).  A simple review of this grievance reveals that the rejection was improper.

Under PD 03.02.130 (ECF No. 17-3, PageID.80-81), "[a] grievant may not grieve the content of policy or procedure except as it was specifically applied to the grievant."  Plaintiff did cite an MDOC policy – PD 05.03.118-NNN – at Steps I and II of this grievance (ECF No. 17-4, PageID.205, 208), but it appears obvious that he did so only to demonstrate that censorship of his outgoing correspondence *would not have been warranted under that policy, if it applied*, and not to challenge the content of the policy itself.  Thus, as Plaintiff appealed the grievance through Steps II and III (ECF No. 17-4, PageID.204-206), Defendant has failed to demonstrate that he did not properly exhaust his January 8, 2019 censorship claim.

The grievance related to Plaintiff's allegations that Defendant censored his outgoing correspondence twice on January 18, 2019 (ECF No. 1, PageID.2, ¶ 7(E-F)), was also improperly rejected on procedural grounds.  At Step I of SMT-19-01-0107-28a, with an incident date of January 20, 2019, Plaintiff complained that Defendant and another individual censored his outgoing email on January 19, 2019, for using a derogatory term, which amounted to discriminatory harassment and a violation of Plaintiff's First Amendment right to free speech.  (ECF No. 17-4, PageID.195.)  The grievance was rejected at Step I as duplicative of a previously filed grievance – SMT-19-01-0051-17A – and the rejection was upheld at Steps II

15

and III.  (ECF No. 17-4, PageID.193-198.)  Plaintiff asserts in his response brief

that this grievance relates to his January 18, 2019 censorship claims (ECF No. 19,

PageID.263), despite no mention of that specific date in the grievance, which

Defendant does not dispute.

Under PD 03.02.130, a grievance may be rejected because it raises issues

duplicative of those raised in another grievance.  However:

> while duplicative grievances are improper and cannot serve as the
> basis for exhaustion, (PD 03.02.130, ¶ G), whether the grievance is
> truly duplicative of another grievance is a question of fact.  As noted
> in *Johannes v. Washington*, No. 14-11691, 2016 WL 1253266, at *6
> (E.D. Mich. Mar. 31, 2016), the mere rejection of a grievance as
> duplicative by MDOC staff does not render the underlying claims
> unexhausted as a matter of law.  The issues in the later grievances
> must be compared to the earlier grievance to determine whether a
> reasonable jury could find the rejection improper before summary
> judgment can be granted.  *Id.*

*Reedy v. West*, No. 16-13876, 2017 WL 2888575, at *2 (E.D. Mich. May 22,

2017), report and recommendation adopted *Reedy v. West*, No. 16-cv-13876, 2017

WL 2880122 (E.D. Mich. July 6, 2017).

Defendant attached both grievances to his motion for summary judgment

(ECF No. 17-4, PageID.193-198; ECF No. 17-5, PageID.246-249), but undertook

no comparison in his summary judgment motion (ECF No. 17, PageID.69), and

only cursorily compared the two in his reply brief, stating that it "was not

unreasonable" to reject SMT-19-01-0107-28a as duplicative of SMT-19-01-0051-

17A because the Grievance Coordinator received them the same day and may

16

reasonably have viewed each as involving the censorship of outgoing emails (ECF No. 22, PageID.296-297).  However, an actual comparison of the two shows that rejection on this basis *was* unreasonable.  Plaintiff complained of censorship in SMT-19-01-0107-28a (ECF No. 17-4, PageID.193-198), as discussed above, while in SMT-19-01-0051-17A, he complained that Defendant endangered him by sharing the information written in the emails with other staff members (ECF No. 17-5, PageID.247).  Accordingly, a reasonable jury could find that the grievance related to Plaintiff's two claims of censorship on January 18, 2019, was improperly rejected on procedural grounds and fully exhausted, as Plaintiff appealed the grievance through Steps II and III (ECF No. 17-4, PageID.193-194, 197-198), and the Court should deny summary judgment of these claims.[6]

### c.    March 5, 2019

The Court should further deny summary judgment of Plaintiff's March 5, 2019 censorship claim (ECF No. 1, PageID.2, ¶ 7(G)).  Plaintiff asserts in his response to Defendant's motion for summary judgment that Defendant fails to address this claim in the instant motion and the claim should, therefore, remain in

---

[6] As the Court should deny summary judgment of the January 18, 2019 censorship claims based on an analysis of the relevant grievances alone, it need not consider Plaintiff's assertions that he filed a grievance on January 20, 2019 to address these claims, but struggled to obtain proper receipts and responses from the Grievance Coordinator for that grievance.  (ECF No. 19, PageID.265-267; Plaintiff's Declaration, Exhibit 1 to ECF No. 19, PageID.270-272, ¶¶ 9-12, 14, 16-17, 19-20.))

the lawsuit.  (ECF No. 19, PageID.265.)  Although I disagree with Plaintiff's assertion, as Defendant argues generally in his motion that Plaintiff exhausted only three of his claims and that those not properly exhausted should be dismissed (ECF No. 17, PageID.71), and attached grievance reports, I am unable to say that Defendant met his burden of establishing a lack of factual dispute with regard to exhaustion of Plaintiff's March 5, 2019 censorship allegation.  And Defendant bears the burden to establish this affirmative defense.  *Surles*, 678 F.3d at 456.

At Step I of SMT-19-03-0385-27B, addressed in Defendant's motion and reply brief (ECF No. 17, PageID.69-70; ECF No. 22, PageID.297-298), which Plaintiff identifies as corresponding to his March 7, 2019 retaliation claim (and which will be discussed later in this report and recommendation), Plaintiff stated, "I . . . believe [the retaliation is] partially in response to a grievance written about GOA Wyse dated 3/5/19 about his unconstitutional censorship of grievant's OUTGOING correspondence."  (ECF No. 17-4, PageID.177.)  Further, Plaintiff stated in his response brief, buried within his assertions regarding the mismanagement of grievances, that Brawley failed to process a grievance dated March 5, 2019, citing to one of the grievance reports attached to Defendant's motion.  (ECF No. 19, PageID.266-267 (citing ECF No. 17-4, PageID.119).)  The page cited shows a Step I grievance labeled SMT-19-03-004900-11Z, complaining that the grievance coordinator failed to process a grievance dated March 5, 2019

18

(ECF No. 17-4, PageID.119), and just a couple of pages later is an unlabeled (no

grievance number) Step I grievance that appears to grieve Defendant for

censorship on March 5, 2019 (ECF No. 17-4, PageID.121).  Although the Step I

response to the grievance complaining of failure to process the original March 5,

2019 grievance states that Plaintiff admitted the situation had been resolved (ECF

No. 17-4, PageID.120), it is unclear what that means.  And the unlabeled grievance

alleging censorship on that date, in combination with Plaintiff's assertion that

Brawley failed to process a grievance on that date, are sufficient to create a

genuine issue of material fact regarding exhaustion of Plaintiff's March 5, 2019

censorship claim.  *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating

that an inmate must exhaust available remedies, but need not exhaust unavailable

ones).

### d.      March 22, 2019

Finally, the Court should grant Defendant's motion for summary judgment

regarding Plaintiff's two allegations of unconstitutional censorship on March 22,

2019 (ECF No. 1, PageID.2, ¶ 7(I-J)).  While Plaintiff is correct that Defendant

does not specifically address these claims in his motion for summary judgment, the

claims need not remain in the lawsuit by default, as Plaintiff suggests.  (ECF No.

19, PageID.265.)  Defendant satisfied his initial burden of establishing the absence

of a genuine issue of fact with regard to exhaustion of these claims by attaching the

grievance reports to his motion and arguing generally that only three claims were properly exhausted, as a defendant cannot produce grievances that do not exist. *See Stansberry*, 651 F.3d at 486.  Since a review of the attached grievance reports reveals no grievances that appear related to these two allegations and Plaintiff has not produced any himself, he has failed to satisfy his own burden of demonstrating, with sufficient evidence, a genuine factual dispute with regard to exhaustion.  *See Wrench LLC*, 256 F.3d at 453; *Alexander*, 576 F.3d at 558.  *See also* FRE 803(7) (the absence of a record of regularly conducted business activity recognized as an exception to the hearsay rule and may be "admitted to prove that the matter did not occur or exist") and the corresponding *Comments* ("Failure of a record to mention a matter which would ordinarily be mentioned is satisfactory evidence of its nonexistence.").  Accordingly, the Court should grant summary judgment of Plaintiff's March 22, 2019 censorship claims.

## 5. Additional retaliation claims

As provided above, Defendant concedes in the instant motion that Plaintiff properly exhausted his claim that Defendant retaliated against him for the content of his correspondence by issuing a NOI on January 16, 2019, directing the Court's attention to SMT-19-02-0188-7A.  (ECF No. 17, PageID.69-71; ECF No. 22, PageID.296 (citing ECF No. 17-4, PageID.184-188).)  He does assert, however, that Plaintiff did not properly exhaust claims that he unconstitutionally retaliated

against Plaintiff for his negative comments by issuing misconduct reports for

insolence on November 30, 2018, December 14, 2018, January 8, 2019, March 19,

2019, March 25, 2019, and March 27, 2019, and by issuing a NOI on March 7,

2019.  (ECF No. 17, PageID.67-71; ECF No. 22, PageID.294-298.)

> **a.    The Court should grant summary judgment on Plaintiff's November 30, 2018, December 14, 2018, January 8, 2019, March 25, 2019, and March 27, 2019 retaliation claims**

Plaintiff claims that Defendant issued him a misconduct report for insolence

on November 30, 2018, as retaliation against him for the negative comments in his

outgoing correspondence.  (ECF No. 1, PageID.2-3, ¶ 8(A).)  From a review of the

grievance reports attached to Defendant's summary judgment motion, it appears

that the alleged misconduct report is likely the one Plaintiff complained of in SMT-

18-12-1255-27A, discussed extensively above.  Again, at Step I of that grievance,

Plaintiff complained, in part, that Defendant issued tickets for insolence on

November 16, 2018, and November 30, 2018, which lacked merit and violated his

First Amendment right to free speech.  (ECF No. 17-4, PageID.217.)

Nevertheless, Plaintiff asserts in his response to the instant motion that SMT-18-

12-1255-27A relates to his November 16, 2018, and November 28, 2018

censorship claims (ECF No. 19, PageID.260), and that Defendant does not address

the November 30, 2018 retaliation claim in his summary judgment motion (ECF

No. 19, PageID.265).  And I see no reason to make the argument for him that this

grievance was properly exhausted and relates to his November 30, 2018 retaliation claim.  As Plaintiff fails to produce any additional evidence demonstrating exhaustion of this claim, despite Defendant satisfying his initial burden of demonstrating no genuine issue of material fact regarding exhaustion by analyzing SMT-18-12-1255-27A and attaching the grievance reports to his motion, *Stansberry*, 651 F.3d at 486, which contain no additional grievances related to this claim, summary judgment is appropriate.  *See Wrench LLC*, 256 F.3d at 453; *Alexander*, 576 F.3d at 558.

The Court should also grant summary judgment of Plaintiff's claims that Defendant retaliated against him for the content of his outgoing communications by issuing misconduct reports on December 14, 2018, January 8, 2019, March 25, 2019, and March 27, 2019 (ECF No. 1, PageID.2-3, ¶ 8(B-C), (E-F)) for similar reasons.  Plaintiff asserts that Defendant does not address these claims in his summary judgment motion and that they should, therefore, remain in the lawsuit. (ECF No. 19, PageID.265.)  However, Defendant met his initial burden of demonstrating that no genuine issue of material fact exists regarding exhaustion of these claims, *Stansberry*, 651 F.3d at 486, by attaching the grievance reports to his motion for summary judgment, discussing any pertaining to the instant claims, and stating generally that only three had been properly exhausted (ECF no. 17,

PageID.71).  A review of the grievance reports supports Defendant's assertions with regard to these four retaliation claims.

Two grievances produced by Defendant list incident dates just before and after January 8, 2019, but one —SMT-19-01-0050-27b— relates only to censorship (ECF No. 17-4, PageID.204-207), which Plaintiff acknowledges in his response brief (ECF No. 19, PageID.261-262), and the other —SMT-19-03-0051-28e— which Defendant addresses in his motion for summary judgment but which Plaintiff does not, contains complaints not that Defendant retaliated against Plaintiff by issuing a misconduct report, but that Defendant endangered him by sharing the content of his emails with other state members (ECF No. 17-5, PageID.247).

There are no grievances in the reports produced by Defendant related to December 14, 2018, beyond that involving Plaintiff's censorship claim of the same date —SMT-18-12-1593-15Z (ECF No. 17-4, PageID.209-213)— in regard to which Defendant conceded exhaustion (ECF No. 17, PageID.67-68).  Nor do I find any grievances complaining of retaliatory misconduct reports on March 25, 2019, or March 27, 2019.  As Defendant cannot produce grievances that do not exist to argue failure to exhaust, and Plaintiff has not come forth with evidence demonstrating that he in fact exhausted each of the claims, summary judgment is appropriate.  *See Wrench LLC*, 256 F.3d at 453.

23

### b.      March 19, 2019

On the other hand, it is my view that Defendant has not met his burden of

demonstrating that Plaintiff failed to exhaust his March 19, 2019 retaliatory

misconduct claim because it was improperly rejected on procedural grounds.  At

Step I of SMT-19-03-0452-15Z, with an incident date of March 19, 2019, Plaintiff

complained that Defendant and another individual violated his "First Amendment

Right to be free from retaliation or disciplinary action resulting from his protected

conduct of sending 'OUTGOING' J-Pay E-mails by falsifying a misconduct report

dated 3/19/19."  (ECF No. 17-4, PageID.172.)  The grievance was rejected at Step

I as duplicative of SMT-19-03-0451-15Z (ECF No. 17-4, PageID.173), and despite

Plaintiff's argument in his Step II appeal that the two grievances differed (ECF No.

17-4, PageID.170), the rejection was upheld at Steps II and III (ECF No. 17-4,

PageID.169, 171).

Under the 2019 version of PD 03.02.130 applicable here, a grievance that

raises issues duplicative of those raised in another grievance filed by the grievant

must be rejected.  PD 03.02.130, ¶ J(1)-(2).  Here, as with Plaintiff's January 18,

2019 censorship claim which was also rejected as duplicative of another grievance

(ECF No. 17-4, PageID.194, 196-198), Defendant only cursorily asserts in his

motion for summary judgment that because the grievance related to the instant

allegation was rejected on procedural grounds, it could not serve to exhaust

Plaintiff's claim (ECF No. 17, PageID.70), and states in his reply brief, without truly examining the language of the grievances or citing case law in support, only that SMT-19-04-0452-15Z was duplicative of SMT-19-03-0451-15Z because both alleged censorship of outgoing emails.  (ECF No. 22, PageID.298.)  *See Reedy*, 2017 WL 28888575, at *2.

A review of the supposedly duplicative grievance reveals otherwise.  In SMT-19-03-0451-15Z, modified to SMT-19-03-0451-28e, rather than complaining of retaliation, as in SMT-19-0452-15Z, Plaintiff complained of censorship.  (ECF No. 17-5, PageID.242-245.)  Defendant cites no law that a prisoner is not permitted to complain separately of censorship and retaliation related to conduct occurring on the same date and, as will be discussed below, argues elsewhere that a grievance may be rejected if it contains multiple unrelated issues (ECF No. 17, PageID.69-70; ECF No. 22, PageID.297-298).  He cannot both insist that unrelated issues may not be joined in a single grievance and that a prisoner must, in fact, do so.  Further, "it is not clearly settled that a prisoner is precluded from separately exhausting different legal claims arising from the same set of facts[,]" *Williams v. Winn*, No. 18-11060, 2019 WL 2252012, at *7 (E.D. Mich. Feb. 27, 2019), report and recommendation adopted 2019 WL 141766.  Accordingly, as Plaintiff appealed the

grievance through Steps II and III, the Court should find that a reasonable jury could believe Plaintiff exhausted this claim, and deny summary judgment.[7]

### c.   Claim of retaliation through issuance of a NOI on March 7, 2019

Finally, the Court should deny summary judgment as to Plaintiff's claim that Defendant unconstitutionally retaliated against him by issuing a NOI on March 7, 2019.  (ECF No. 1, PageID.5, ¶ 19.)  The related grievance, SMT-19-03-0385-27B, with an incident date of March 7, 2019, in which Plaintiff complained at Step I that "[Defendant] . . . and anyone unknown to [him] have violated [his] First Amendment right to be free from retaliation or disciplinary actions resulting from his protected conduct of sending 'OUTGOING' J-Pay E-mails by falsifying a NOI dated 3/7/19" (ECF No. 17-4, PageID.177), was rejected through Step III because the pertinent policy states that a grievance must be limited to one issue and a particular prison, but this grievance involved "outgoing J-Pay, Retaliation by staff, Unethical conduct, and Unconstitutional censorship."

Under PD 03.02.130, a grievance may be rejected if it "contains multiple unrelated issues."  (ECF No. 17-3, PageID.81, ¶ G(1).)  A grievance is only improper when it contains two completely unrelated issues is it improper.  *Reeves*,

---

[7] As a review of the grievances reveals SMT-19-04-0452-15Z was improperly rejected as duplicative, there is no need to address Plaintiff's argument that the claim was also exhausted through the disciplinary process because he was found not guilty of the misconduct.  (ECF No. 19, PageID.265, 272.)

2015 WL 3206399, at *5.  On the other hand, "a prisoner 'properly' exhausts where the multiple issues are related or the grievance really involves one claim and multiple harms."  *Id*. (citing *LaFountain v. Martin*, 334 F. App'x 738, 741 (6th Cir. 2009).  Here, it is apparent from the language of Plaintiff's complaints at SMT-19-03-0385-27B that the grievance relates specifically and only to retaliation and was, therefore, improperly rejected under PD 03.02.130 ¶ G(1).  As Plaintiff appealed it through Step III, the Court should deny summary judgment of Plaintiff's March 7, 2019 retaliation claim.

### 6.    Misrepresentation of grievance procedures – John Brawley

Finally, Plaintiff argues generally in his response to Defendant's motion for summary judgment that Grievance Coordinator John Brawley's "blatant improper rejections of most of Mee's grievances, his failure to provide receipts and forms in a timely manner or at all, and his misrepresentations of the grievance policy in response is tantamount to the grievance process being a simple dead end."  (ECF No. 19, PageID.267.)  Yet Plaintiff did not name Brawley as a defendant in this case, and this report addresses Plaintiff's complaints regarding misapplication of the grievance process in relation to the specific claims made in this lawsuit.  He cannot expect the Court to address claims raised only in his response to Defendant's motion for summary judgment and not in his complaint.  Moreover, if he is suggesting by his "dead end" characterization that the grievance process is

27

somehow unavailable to him, the sundry grievances discussed herein which were fully exhausted demonstrate otherwise.

### D. Conclusion

The Court should **GRANT IN PART** and **DENY IN PART** Defendant's motion for partial summary judgment (ECF No. 17), and dismiss from the lawsuit Plaintiff's March 22, 2019 censorship claim, as well as his November 30, 2018, December 14, 2018, January 8, 2019, March 25, 2019, and March 27, 2019 retaliation claims.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 507 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and be labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  June 8, 2020                              s/*Anthony P. Patti*
                                                            Anthony P. Patti
                                                            UNITED STATES MAGISTRATE JUDGE